IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHERA BANKS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 09-00561-KD-M |
| | ) | |
| OFFICER MICHAEL JAMES and | ) | |
| CITY OF MOBILE, | ) | |
| Defendants. | ) | |

**ORDER**

This matter came before the Court for a non-jury trial on October 4, 2010. The witnesses at trial were Shera Banks, Scott Stockton (loss prevention manager for Belk's), Officer Brandon Orso, and Officer Michael James. Also, Ms. Banks' medical records, Ms. Banks' criminal conviction record and pictures of the scene and Ms. Banks' injuries were admitted. Upon consideration of the documentary and testimonial evidence presented at trial and all other pertinent portions of the record, the Court hereby makes the following findings of fact and conclusions of law.

**I.**     **Procedural Background**

Plaintiff initiated this Section 1983 action against Defendants on August 18, 2009 in the Circuit Court of Mobile County, Alabama. (Doc. 2-6). Plaintiff asserts claims against Defendant Michael James (a police officer for the Mobile Police Department) for alleged violations of the Fourth Amendment to the Constitution of the United States pursuant to 42 U.S.C. § 1983, as well as state law claims for assault and battery (Ala. Code § 11-47-190). (Id.) Plaintiff claims that the City of Mobile is liable because Officer James worked for the city and acted unreasonably during the arrest. Specifically, Plaintiff's claims stem from Officer James'

1

alleged use of excessive force against her during an arrest on August 28, 2007 at a Belk department store in Mobile, Alabama. Plaintiff claims that excessive force result in her writs being broken. (Doc. 2-6 at 3).

On August 28, 2009, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441. (Docs. 1, 2). Plaintiff filed an Amended Complaint on September 28, 2009, to include a request for attorney's fees and for damages be assessed by the Court. (Doc. 15).

## II. <u>Findings of Fact</u>

Plaintiff, Shera Banks, is a 23 year old resident of Mobile, Alabama. Defendant the City of Mobile, Alabama, is a municipal corporation organized under the laws of the State of Alabama. Defendant Officer James was employed as a police officer with the City of Mobile. Officer James has been employed as police officer with the Mobile Police Department for over twenty years. Non-party Brandon Orso was employed as a police officer with the City of Mobile. Officer Orso has been employed for five years as a police officer.

On August 28, 2007, Ms. Banks was shopping at a Belk department store, when she stole a ring and tried to leave the store with same. As Ms. Banks tried to leave the store, she was approached by a manager and asked to return inside. Ms. Banks was taken to an office in the back of the store. Officer Brandon Orso responded to the call from Belk's regarding Ms. Banks. Officer James was dispatched as a back-up unit.

When Officer Orso arrived at the store, Ms. Banks was in the Belk's back office. Ms. Banks refused to give Officer Orso any information. Officer Orso stepped out of the office to speak with Ms. Banks' mother who was in the store and obtained Ms. Banks' identification information. After speaking with Officer Orso, Ms. Banks' mother left the store with Ms.

Banks' infant son.

Officer Orso returned to the office at which time Ms. Banks started to scream loudly. Officer Orso handcuffed Ms. Banks. Ms. Banks resisted only minimally; she tensed up and tried to resist putting her hands behind her back. At this point, Officer James entered the room and Ms. Banks started screaming even louder.

Scott Stockton, Belk's loss prevention officer, requested a photograph of plaintiff to be used to prevent plaintiff from entering the store again. Plaintiff refused. Officer Orso placed his hands on Ms. Banks shoulder in an attempt to get her to turn for the photograph. Ms. Banks then attempted to run back into the store at which point Officer James caught her and held her back. Ms. Banks continued to resist so the effort to photograph Ms. Banks was aborted.

Officer Orso then attempted to escort Ms. Banks down the hall to the patrol car. Ms. Banks continued to be belligerent and attempted to bite Officer Orso. Officer James grabbed Ms. Banks and she proceeded to bite Officer James leaving slight abrasions on his hand from the braces on her teeth. Officer James then pushed her off of him onto the floor. Ms. Banks landed on her back. Ms. Banks then kicked Officer James repetitively, twice in the groin. Officers Orso and James then dragged Ms. Banks by the arms out of the building to Officer Orso's patrol car.

Officer Orso returned to the Belk's office while Officer James stayed outside with Ms. Banks. Ms. Banks started kicking the patrol car door and window until she kicked the window off track. Officer James then pulled Ms. Banks out of the car and put her on the concrete face down. Several other people were in the parking lot and observed Officer James' encounter with Ms. Banks.

When Officer Orso returned he observed Ms. Banks on the concrete and assisted Officer James in cuffing Ms. Banks' feet. Ms. Banks was then placed back in Officer Orso's patrol car. Ms. Banks continually fought and resisted the Officers' efforts. As Officer Orso attempted to pull away, Ms. Banks again kicked the window off track. Officer Orso stopped and with the help of Officer James transferred Ms. Banks to Officer James' patrol car which had bars on the windows.

Officer James, followed by Officer Orso, transported Ms. Banks to the Metro Jail facility. Throughout the ride, Ms. Banks screamed, cursed, spit, kicked and threatened that she when she got out she was going to get and gun and kill Officer James. Once at the Metro Jail, Officer James believed that Ms. Banks had calmed so he took off her handcuffs to turn her over to the Jail attendants. Ms. Banks hit Officer James in the face and had to be restrained by two Metro guards.

Ms. Banks was charged with theft of property third degree, disorderly conduct, and resisting arrest. Ms. Banks plead guilty to the theft of property third degree. Ms. Banks was found guilty of disorderly conduct and resisting arrest; she did not appeal these convictions.

Ms. Banks testified that she did not scream, bite, kick or resist arrest. Ms. Banks further claims that during the incident that Officer James struck her on the face several times. Ms. Banks also claims that while in the parking lot Officer James lifted her over his head and then slammed her onto the concrete. Ms. Banks states that her wrist was broken at that time and that Officer James' force against her was the cause. Ms. Banks claims that over three years later her wrist still hurts. In all respects, the testimony of Ms. Banks was implausible and unworthy of belief.

### III. Conclusions of Law: Section 1983 Claims

Pursuant to 42 U.S.C. 1983, Ms. Banks alleges that Officer James violated her constitutional rights when he arrested her using unreasonable (excessive) force. Title 42, Section 1983 provides individuals with a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States that are committed under color of state law. See, e.g., Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir. 1990).

#### A. City of Mobile

To state a Section 1983 claim against the City of Mobile, a municipality, Plaintiff must allege that she suffered a constitutional injury that was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[]" because a municipality cannot be held liable under Section 1983 solely because it employs a tortfeasor. Blunt v. Tomlinson, Slip Copy, 2009 WL 921093, *5 (S.D. Ala. Apr. 1, 2009) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). See also McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (providing that "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation[]"). While alleging that her constitutional rights were violated, Ms. Banks has not alleged or presented evidence concerning the other two requisite elements. Thus, the Court finds for the City of Mobile.

B.  **Officer James**

1.  **Qualified Immunity**

As specified in Brown:

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" …. A law enforcement officer is entitled to qualified immunity if "an objectively reasonable officer in the same situation could have believed that the force used was not excessive." …. Qualified immunity from suit is intended to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." ….

Brown v. City of Huntsville, Ala., 608 F.3d 724, 733 (11th Cir. 2010) (citations omitted). A qualified immunity determination requires evaluation of a multi-part test. Courts may "exercise their sound discretion" in deciding which of the two prongs of the qualified immunity analysis should be addressed first. See, e.g., Pearson v. Callahan, 129 S.Ct. 808, 818 (2009)).

"The initial inquiry in a qualified immunity case is whether the public official proves 'that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Brown, 608 F.3d at 734 at n.14; Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Lee, 284 F.3d at 1194. In this case, there does not appear to be any dispute in the record that Officer James was acting within the scope of his discretionary authority during the relevant time period.

In the next step, a plaintiff must demonstrate that: 1) the defendant violated a constitutional right, and 2) this right was clearly established at the time of the alleged violation. See, e.g., Townsend v. Jefferson Cty., 601 F.3d 1152, 1158 (11th Cir. 2010) (quoting Holloman

6

ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)).

### a. **Constitutional Violation**

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee, 284 F.3d at 1197. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. However, "while some force is permitted in effecting an arrest, whether the force is reasonable depends on 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" Brown, 608 F.3d at 737-738.

The Fourth Amendment's "objective reasonableness" standard governs whether a use of force is excessive. Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008). As stated in Brown: "[a] law enforcement officer receives qualified immunity for use of force during an arrest if an objectively reasonable officer in the same situation could have believed the use of force was not excessive….[it] must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'…We judge use of force solely on an objective basis, and we do not consider an officer's subjective belief." Brown, 608 F.3d at 738. See also Graham v. Connor, 490 U.S. 386, 396-397 (1989) (citations omitted). See also Hamilton v. City of Jackson, Ala., 261 Fed. Appx. 182, 185 (11th Cir. 2008) (unpublished). "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." Saucier v. Katz, 533 U.S. 194, 205 (2001), *overruled in part*, Pearson v. Callahan, 129

7

S.Ct. 808, 818 (2009). The excessive force standard "looks to the need for force, the amount of force used, and the injury inflicted." Jones v. City of Dothan, Ala., 121 F.3d 1456, 1460 (11th Cir. 1997) (per curiam).

To balance the necessity of use of force against the arrestee's constitutional rights, courts must evaluate: 1) the severity of the crime; 2) whether the suspect posed an immediate threat to the safety of the officer or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002) (quoting Graham, 490 U.S. at 396)). See also Borton v. City of Dothan, 2010 WL 3328361, *7 (M.D. Ala. Aug. 24, 2010). "[G]ratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." Hadley, 526 F.3d at 1330. However, a law enforcement officer's right to arrest necessarily carries with it the ability to use some force in making the arrest. Lee, 284 F.3d at 1197-1198 (citing cases permitting use of handcuffs).

For even minor offenses, physical restraint, use of handcuffs, and pushing into walls have been determined in some circumstances to be reasaonable. See Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000) (when an officer was grabbing an arrestee from behind, shoving him a few feet against a vehicle, and pushing him up against a van, which resulted in minor bruising but did not require medical treatment); Jones v. City of Dothan, Ala., 121 F.3d 1456, 1460 (11th Cir. 1997) (concluding there was no constitutional violation to slam plaintiff against wall, kick plaintiff's legs apart, and require plaintiff to raise arms above his head); Gold v. City of Miami, 121 F.3d 1442, 1446-1447 (11th Cir. 1997) (finding no constitutional violation for arresting plaintiff for disorderly conduct and affixing handcuffs too tightly); Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1559-1560 (11th Cir. 1993) (concluding that it was not excessive force

to arrest plaintiff for building code violation by pushing him up against wall and applying chokehold to unresisting plaintiff while affixing handcuffs).

Considering Ms. Banks' extreme resistance to arrest and her volatile state, the Court finds that Officer James' efforts to subdue Ms. Banks were not unreasonable. Although there is evidence that Ms. Banks' wrist may have been broken during the incident, there is insufficient evidence that any force used by Officer James was the cause. Considering Ms. Banks' behavior in the back of the police car, it is equally likely that she caused her own injuries. Accordingly, the Court finds in favor of Officer James.

## IV. Conclusions of Law: State Law Claims

Plaintiff asserts state law claims for assault and battery against Officer James. In Alabama, the elements of an assault and battery claim are as follows:

> "'[A]n intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a wellfounded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt if not prevented.'" …. A successful assault becomes a battery, which consists of the touching of another in a hostile manner.

Wright v. Wright, 654 So.2d 542, 544 (Ala. 1995). In a civil case, the elements of battery are: (1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner. Ex parte Atmore Community Hosp., 719 So.2d 1190, 1193 (Ala. 1998). Additionally, the Alabama Supreme Court has explained that "'[a] battery consists in an injury actually done to the person of another in an angry or revengeful or rude or insolent manner, as by spitting in the face, or in any way touching him in anger, or violently jostling him out of the way, or in doing any intentional violence to the person of another.'" Surrency v. Harbison, 489 So.2d 1097, 1104 (Ala. 1986)

9

(citing Singer Sewing Machine Co. v. Methvin, 63 So. 997, 100 (1913)).  See also Perkins v. City of Creola, 2010 WL 1960915, *18 (S.D. Ala. May 14, 2010).

Under Alabama law, "[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities."  Ex parte Hayles, 852 So.2d 117, 122 (Ala. 2002).  Alabama's state-agent immunity doctrine bars suit against law enforcement officers effecting arrests, except to the extent the officer acted willfully, maliciously, fraudulently, in bad faith, beyond his legal authority, or under a mistaken interpretation of law, or if the Constitution or laws of the United States or Alabama require otherwise.  Ex parte Cranman, 792 So.2d 392, 405 (Ala. 2000).[1]  Indeed, the test for state-agent immunity is set forth in Ex parte Cranman, 792 So.2d 392 (Ala. 2000), as modified in Hollis v. City of Brighton, 950 So.2d 300 (Ala. 2006).  See, e.g., Suttles v. Roy, 2010 WL 2034827, *3-4 (Ala. May 21, 2010) (unpublished).  Under Cranman, state-agent immunity is subject to a burden-shifting framework. The police officer bears the burden of demonstrating that the plaintiff's claims arise from a function that would give rise to immunity.  See Brown, 608 F.3d at 741.  When the police officer has shown this, the burden shifts to the plaintiff to show that the police officer "'acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority.'"  Id.

Alabama Code § 6-5-338(a) (1994) provides that "every peace officer ... shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."  The court in Cranman elaborated as follows: "[a] State agent *shall* be immune from civil liability in his or her personal

---

1 The Alabama Supreme Court formally adopted the Cranman plurality's state-agent immunity test in Ex

capacity when the conduct made the basis of the claim against the agent is based upon the agent's ... exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons...." 792 So.2d at 405 (emphasis in original). In order to constitute a "discretionary function" for purposes of Section 6-5-338(a), the defendant must have had at least arguable probable cause to arrest. Borders v. City of Huntsville, 875 So.2d 1168, 1179-1180, 1181 (Ala. 2003). See also Wood v. Kesler, 323 F.3d 872, 883 (11th Cir. 2003).

In this case, there does not appear to be any dispute that Officer James was acting within the scope of his discretionary function as a law enforcement officer. Accordingly, Plaintiff bears the burden of showing that Officer James acted willfully, maliciously, fraudulently, or in bad faith. For the same reasons stated previously, Ms. Banks has failed to meet her burden. Accordingly, the Court finds in favor of Officer James.

### 2. State Law Claims: City of Mobile

"[U]nder principles of vicarious liability, where a municipal employee enjoys immunity, the municipality likewise is immune as to claims based on the employee's conduct." City of Bayou La Batre v. Robinson, 785 So.2d 1128, 1131 (Ala. 2000). In cases such as this where the "municipal employee" is a law enforcement officer, Alabama's statutory, discretionary-function immunity explicitly extends an officer's immunity to the employing municipality. Alabama Code Section 6-5-338(b) provides that "[t]his section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers." Ex parte City of Gadsden, 781 So.2d 936, 938, 940 (Ala. 2000) (concluding that Section 6-5-338(a)

---

parte Butts, 775 So.2d 173, 177-78 (Ala.2000).

gave officer discretionary-function immunity and "[t]he plain language of § 6-5-338(b) ... extends that discretionary-function immunity to the City[]"); Borders, 875 So.2d at 1183.

Ms. Banks has failed to prove any grounds to recover against the City of Mobile for the state law claims. Accordingly, the Court finds in favor of the City of Mobile.

**DONE** and **ORDERED** this the **5**$^{th}$ day of **October 2010.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**